## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| ERICK OMAR GARCIA, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICIA HYDE; TODD LYONS; | ) | C.A. No. 25-cv-585-JJM-PAS |
| U.S. IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT; KRISTI NOEM; | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY; PAMELA BONDI, | ) | |
| Respondents. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Erick Omar Garcia brings a habeas petition under 28 U.S.C. § 2241, seeking an order from this Court that he be released from the custody of Immigration and Customs Enforcement ("ICE"). ECF No. 1. Mr. Garcia challenges the constitutional adequacy of the bond hearing he received while in custody, arguing that the immigration judge ("IJ") who ordered his continued detention conducted a deficient proceeding. *Id.*; ECF No. 9 at 1. The Government objects to Mr. Garcia's petition, primarily arguing that this Court lacks jurisdiction to review the IJ's order under 8 U.S.C. § 1226(e). ECF Nos. 7, 8.

The Court finds that Section 1226(e) does not preclude review of Mr. Garcia's petition. Further, for the reasons stated below, the Court finds that Mr. Garcia did

not receive the due process he was owed at his bond hearing. As such, the Court GRANTS Mr. Garcia's petition and ORDERS his immediate release.

## I.    BACKGROUND

### A.    Statutory and Regulatory Framework

The Immigration and Nationality Act ("INA") authorizes the Government to detain certain noncitizens pending a decision on whether to remove them from the country. *See* 8 U.S.C. § 1226; *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1226(a) of the INA provides for discretionary detention. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 26-27 (1st Cir. 2021). This provision permits—but does not require—the Government to arrest and detain a noncitizen "[o]n a warrant issued by the Attorney General" or their designees. 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1) (2025); *see Jennings*, 583 U.S. at 303. If the Government arrests a noncitizen on such a warrant, the Attorney General or their designees may then continue to detain them or release them on bond of at least $1,500 or conditional parole. 8 U.S.C. §§ 1226(a)(1)-(2); 8 C.F.R. § 236.1(c)(8) (2025); *see Hernandez-Lara*, 10 F.4th at 24 n.1.

An ICE officer "makes the initial determination for noncitizens subject to detention under section 1226(a)." *Hernandez-Lara*, 10 F.4th at 26. If the officer opts for continued detention, the noncitizen has a Fifth Amendment Due Process right to seek review of that decision at a bond hearing (also known as a "custody redetermination" hearing) before an IJ. *Id.* at 41. At that hearing, the Government bears the burden of proving "by clear and convincing evidence that [the noncitizen]

poses a danger to the community" or "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Id.*

In making a bond determination, the IJ must sufficiently explain their reasoning to permit appellate or judicial review of their decision. *Mayancela v. FCI Berlin, Warden*, No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *6 (D.N.H. Nov. 18, 2025) (citing *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023)). While the IJ "need not discuss ad nauseam every piece of evidence," they "may not simply ignore substantial testimonial and documentary proof." *Barnica-Lopez*, 59 F.4th at 530 (quoting *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007)). The IJ must give "reasoned consideration to the evidence as a whole, [make] supportable findings, and adequately explain[ ] [their] reasoning." *Id.* (quoting *Pan*, 489 F.3d at 87).

If the Government fails to meet its burden, then bond or conditional parole must be granted. *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, --- F. Supp. 3d ----, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025); *Bermeo Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 WL 2494530, at *4 (D. Me. Aug. 29, 2025). If the Government does meet its burden and the IJ determines that the noncitizen must remain in custody, then the noncitizen may appeal that decision to the Board of Immigration Appeals ("BIA"). *Hernandez-Lara*, 10 F.4th at 26 (citing 8 C.F.R. § 236.1(d)(3)). But this BIA decision may not be directly appealed to the relevant Court of Appeals. *Romero v. Hyde*, No. 25-11631-BEM, --- F. Supp. 3d ----, 2025 WL 2403827, at *6 (D. Mass. 2025) (citing *Gudiel Polanco v. Garland*, 839 F. App'x 804, 805 (4th Cir. 2021) (per curiam); *Gomez De Chacon v. Barr*, 828 F. App'x 459, 460 (9th Cir. 2020)). Rather, "a petition

3

for a writ of habeas corpus, filed in the appropriate district court, is the only mechanism by which a noncitizen may seek judicial review of an IJ's bond decision."[1] *Mayancela*, 2025 WL 3215638, at *4 (citing *Gudiel Polanco*, 839 F. App'x at 805; *Ben Halim v. Ashcroft*, 107 F. App'x 1, 6 (7th Cir. 2004)).

### B.    Factual and Procedural Background

Mr. Garcia is a citizen of Guatemala. ECF No. 8 at 2. On May 29, 2014, he was admitted to the United States on a B1/B2 visa, which allowed him to stay in the country for up to six months. *Id.* When the visa expired, Mr. Garcia did not return to his home country but instead remained in the United States. *Id.*

On October 25, 2014, while Mr. Garcia was in the United States, the Guatemalan government issued a warrant for his arrest, charging him with "Suppression of Marital Status" and "Ideological Falsehood."[2] ECF No. 8 at 2. The Government claims that this warrant remains active today. *Id.*; *see also* ECF No. 13, Ex. 7 at 4, 6. Mr. Garcia contends that there is no active warrant for his arrest. ECF No. 1 at 2; *see also* ECF No. 13, Ex. 2a at 4-5.

Mr. Garcia subsequently married a U.S. citizen. ECF No. 1 at 6. On July 15, 2022, his spouse filed an immediate relative petition with U.S. Citizenship and

---

[1] Of course, "[i]f the district court denies the noncitizen's habeas petition, the noncitizen may then appeal that denial to the relevant Court of Appeals." *Mayancela*, 2025 WL 3215638, at *4 (citing Fed. R. App. P. 22(a)).

[2] In its briefing to this Court, the Government refers to these charges as "fraudulent [alteration] or concealment of civil status and false statements in official documents." ECF No. 8 at 2. However, given that both DHS in Mr. Garcia's arrest report and the IJ at Mr. Garcia's bond hearing refer to these charges as "Suppression of Marital Status" and "Ideological Falsehood," *see* ECF No. 13, Ex. 7 at 4-5; ECF No. 13, Ex. 2a at 3, this Court will do so as well.

Immigration Services ("USCIS").[3]  *Id.*  This petition remains pending before USCIS. ECF No. 8 at 2.

On the morning of August 14, 2025, ICE officers encountered Mr. Garcia while he was driving in Norwalk, Connecticut.  ECF No. 1 at 14.  The officers stated that the U.S. Department of Justice's INTERPOL Unit had brought Mr. Garcia to their attention, claiming that the warrant for his arrest in Guatemala remained active and that the Guatemalan government sought to obtain custody of Mr. Garcia.  *Id.*  As such, the officers pulled Mr. Garcia over, removed him from his car, and handcuffed him.  *Id.*

ICE later charged Mr. Garcia with having overstayed his visa.  ECF No. 8 at 2.  The agency ordered Mr. Garcia detained under 8 U.S.C. § 1226(a), claiming that the arrest warrant in Guatemala made him a flight risk.  *Id.*  ICE then transferred Mr. Garcia to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island, where he remains today.  *Id.* at 3.  While in custody, Mr. Garcia filed an adjustment of status application with USCIS.[4]  ECF No. 1 at 6.  That application also remains pending.  *Id.*

---

[3] Also known as a Form I-130 petition, this petition allows the citizen-relative to classify the noncitizen as their immediate relative.  *Dep't of State v. Muñoz*, 602 U.S. 899, 904 (2024).  This classification extends to spouses.  *Id.*  Once USCIS approves the petition, then the petition is forwarded to the State Department.  *Teles de Menezes v. Rubio*, 156 F.4th 1, 3-4 (1st Cir. 2025).  The noncitizen may then apply to the State Department for an "immediate relative visa."  *Id.* at 4 (citing *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 47-48 (2014) (plurality opinion)).

[4] Also known as a Form I-485 application, this is a form of immigration relief that allows, in the "discretion" of the Attorney General, the adjustment of a noncitizen's status to that of a lawful permanent resident.  *Viana Guedes v. Mayorkas*, 123 F.4th 68, 70 (1st Cir. 2024) (citing 8 U.S.C. § 1255(a)).

On August 28, 2025, Mr. Garcia appeared for a bond hearing before the Chelmsford Immigration Court. ECF No. 8 at 2. Mr. Garcia, through his attorney, presented several pieces of evidence in support of his request for release on bond, including evidence that indicated that there was no active warrant for his arrest in Guatemala. ECF No. 14, Ex. 4 at 3-10.

The first document, dated August 27, 2025, is from the Head of the Criminal Records Unit of the Supreme Court of Justice in Guatemala. *Id.* at 5. The official stated that Mr. Garcia's "criminal record does not appear" in the Guatemalan government's system. *Id.* The second document, dated July 28, 2025, is from the Guatemalan Migration Institute, an agency responsible for verifying whether the Guatemalan government has imposed a "root" ("*arraigo*" in Spanish) on a particular individual, which is a precautionary measure that limits the individual's ability to leave the country during a pending legal proceeding against them.[5] *Id.* at 8. In Mr. Garcia's case, the agency certified that there were "no roots" against him. *Id.*

The parties focused a significant portion of the bond hearing on the question of whether Mr. Garcia's arrest warrant remained in effect. ECF No. 13, Ex. 2a. The Department of Homeland Security's ("DHS") attorney ("RL") maintained that the warrant was active, and therefore claimed that Mr. Garcia is a flight risk. *Id.* at 3.

---

[5] This practice is prevalent in Latin American countries. *See, e.g.*, *Carpenter v. Republic of Chile*, No. 07–CV–5290 (JS)(ETB), 2009 WL 5255327, at *1 n.1 (E.D.N.Y. July 29, 2009) (describing practice in Chile); *United States v. Leon*, No. 09 CR 383-16, 2018 WL 4339374, at *3 n.3 (N.D. Ill. Sept. 11, 2018) (describing practice in Mexico); *see also Roots*, Guatemalan Migration Institute, https://igm.gob.gt/arraigos-2 (translated from Spanish to English).

Conversely, counsel for Mr. Garcia ("KMA") asserted that the warrant was no longer in effect, thereby negating any claim of flight risk. *Id.* at 4-5. A transcript[6] from the hearing is as follows:

> **IJ:**   DHS Um, tell me in the order of importance, jurisdiction, danger and flight risk.
>
> **RL:**   Your Honor, uh, he, there's no jurisdictional issues. Um, and I'm not arguing danger. I'm arguing that he's a flight risk that can't be ameliorated by bond. Um, there is a warrant for his arrest in Guatemala. Um, the charge is for suppression of marital status and ideological falsehood. Right. Um, so that stems out of something that happened in 2014. Um, those charges have not been adjudicated because around that time is when he left for the United States.
>
> \* \* \*
>
> **IJ:**   Oh, okay. And what is this, I have no idea what this charge is. Suppression, material status and ideological falsehood. Do you have any idea what that is?
>
> **RL:**   No, judge, we're still, we're still trying to get that information ourselves.
>
> **IJ:**   Okay. All right. So I'm gonna turn to counsel. Counsel, tell me, um, everything that you know about Relevant material. Go ahead.
>
> **KMA:** He last entered the United States in May of 2014. The arrest warrant on its face was not issued un un until October of that year.
>
> \* \* \*
>
> **KMA:** Also, I would note that the, uh, that the last pa, uh, document that we submitted, uh, shows that he has not wanted in Guatemala.
>
> **IJ:**   Sir. Uh, counsel, do you know anything about this arrest warrant?
>
> **KMA:** No. I have no clue what the charges are. Uh, what, what's, what, what they mean. I, I only know the date that it was issued. I've, I've

---

[6] The Government submits that this is a "Rough and Unverified Transcription" of Mr. Garcia's bond hearing. ECF No. 13, Ex. 2a at 2. The audio from the hearing can be found at ECF No. 13, Ex. 2.

seen the doc, I've seen the document.  Uh, the date on the document, as I said, was from 2014, several months after he came to the United States.  Uh, more than that, I don't know.  I, I tried looking up, looking on the internet, uh, you know, do, doing a Google search for those, uh, terms came up with nothing useful.  I, I'm as mystified as everyone else.

**IJ:**     Okay.

**IJ:**     So, so what we know is that the respon-, so the identity of the person wanted is the respondent.  I mean, the person's full name, date of birth, and national ID numbers all identified and where the person is from generally is all identified.  And there's an arrest warrant from 2014 right around the time he left.  Um, if this, he was

**KMA:** He was wanted, is he, apparently he's not wanted anymore.

**IJ:**     I don't know that.  I don't.  It says here, well, the court finds that the evidence, um, standard for flight preponderance of the evidence standard has been satisfied.  And the court finds here that, um, with an internet, uh, uh, an arrest warrant being issued, uh, and the respondent having, um, having left the country around the same time, uh, before the arrest issued arrest warrant date, but around the same time, the court finds that, um, no amount of bond can ameliorate, uh, the flight risk.  In this case, bond is denied to the respondent.  Sir, bond is denied.  Um, there's an arrest warrant out for you in Guatemala, and I think, uh, that, um, I think meets the preponderance of the evidence standard.  Uh, and the court is not going to issue bond.

*Id.* at 3-5.

Following the hearing, the IJ issued a short order in which she denied Mr. Garcia's request to be released on bond.  ECF No. 12 at 2.  The basis for her denial was as follows: "After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered: Denied, because [t]he [r]espondent poses a flight risk that would not be ameliorated by any conditions or bond amount."  *Id.*  Though he reserved the right to appeal, Mr. Garcia ultimately chose not to appeal this decision to the BIA.  *Id.*; ECF No. 9 at 1.

On September 6, 2025, ICE charged Mr. Garcia as removable under 8 U.S.C. § 1227(a)(1)(B).  ECF No. 8 at 2-3.  ICE initiated removal proceedings against him, which remain pending at this time.  *Id.*

On November 4, 2025, Mr. Garcia filed this habeas petition, seeking release from ICE custody.  ECF No. 1 at 2.  He challenges the IJ's decision to deny bond, essentially claiming that the IJ unconstitutionally erred by concluding that he posed a flight risk because there is no outstanding warrant for his arrest.  ECF No. 1 at 6.  The Government objects to his petition, largely on jurisdictional grounds.  ECF Nos. 7, 8.

Mr. Garcia separately alleges in his petition that his detention would interfere with his pending I-130 application.  ECF No. 1 at 2.  USCIS scheduled an I-130 interview for November 20, 2025, in its Hartford, Connecticut office.  ECF No. 8 at 3 n.2.  The Government assured in a filing that, given the Court's authorization, it would transport Mr. Garcia to and from his I-130 interview.  *Id.* at 3.  The Court subsequently granted this request.  *See* Text Order (Nov. 18, 2025).

## II.    DISCUSSION

### A.    Subject-Matter Jurisdiction

The Government's primary contention is that 8 U.S.C. § 1226(e) deprives this Court of jurisdiction to review Mr. Garcia's challenge to the IJ's decision to deny bond.  ECF No. 8 at 6.  This Court is always "under an unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate."  *Am.*

*Policyholders Ins. Co. v. Nyacol Prods., Inc.*, 989 F.2d 1256, 1258 (1st Cir. 1993). As such, the Court reviews this jurisdictional argument closely.

Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). Section 1226(e) only bars "review of the Attorney General's discretionary judgment."[7] *Saint Fort v. Ashcroft*, 329 F.3d 191, 200 (1st Cir. 2003) (citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003)). It does not preclude, however, "habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)).

Indeed, under Section 1226(e), "district courts have jurisdiction to review [an] Immigration Judge's discretionary bond denial only 'where that bond denial is challenged as legally erroneous or unconstitutional.'" *Mayancela*, 2025 WL 3215638, at *4 (quoting *Diaz-Calderon v. Barr*, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020) (quoting *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 772-73 (N.D. Cal. 2019))). Several district courts within this circuit have also noted this distinction. *See, e.g.*, *Mayancela*, 2025 WL 3215638, at *4 (holding that court had jurisdiction to review

---

[7] For instance, this Court would not have jurisdiction to review a claim "that an IJ, exercising his statutorily-delegated discretion, 'set an excessively high bond amount.'" *Hernandez*, 872 F.3d at 987 (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053, 1067 (9th Cir. 2008)).

whether IJ applied the constitutionally mandated burden of proof at bond hearing); *Massingue v. Streeter*, No. 3:19-cv-30159-KAR, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020) (explaining that § 1226(e) does not preclude review of "whether the petitioner received the constitutional due process to which he was entitled" at the bond hearing).

Here, Mr. Garcia does *not* challenge the IJ's discretionary judgment. Instead, he challenges whether the IJ provided him with a constitutionally adequate bond hearing.[8] *See* ECF No. 1 at 2; ECF No. 9 at 1. He takes specific issue with the IJ's decision to deny him release on bond because she relied on the Guatemalan arrest warrant in making her flight risk determination, despite there being "no outstanding warrant for his arrest." ECF No. 1 at 6. He also challenges the IJ's reasoning as flawed. ECF No. 9 at 1. These are precisely the types of claims that belong in this Court. "[C]laims that the discretionary process itself was constitutionally flawed are

---

[8] The Court construes Mr. Garcia's petition as a constitutional due process claim for two reasons. First, in his petition, where Mr. Garcia is prompted to "[s]tate every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States," he states: "Petitioner is not a flight risk. There is no outstanding warrant for his arrest." ECF No. 1 at 6.

Second, in Mr. Garcia's Reply Brief, where he discusses the type of relief that this Court should grant him, Mr. Garcia states: "This court need only look at the decisions of other district courts in this circuit which have granted relief to habeas petitioners." ECF No. 9 at 1 (citing *Sampaio v. Hyde*, No. 1:25-cv-11981-JEK, --- F. Supp. 3d ----, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-cv-326-LM-AJ, --- F. Supp. 3d ----, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Doe v. Moniz*, No. 1:25-cv-12094-IT, --- F.Supp.3d ----, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); *Romero*, 2025 WL 2403827). This Court did look at these decisions and notes that the first three involve due process claims and the fourth one involves a statutory claim.

Accordingly, the Court concludes that Mr. Garcia has brought a constitutional due process claim.

'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241.'" *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting *Gutierrez-Chavez v. Immigr. & Naturalization Serv.*, 298 F.3d 824, 829 (9th Cir. 2002)).

Accordingly, the Court finds that Section 1226(e) does not divest it of subject-matter jurisdiction over Mr. Garcia's claim.

### B.    Exhaustion

The Government next argues that Mr. Garcia should be required to exhaust his administrative remedies before pursuing his habeas challenge. ECF No. 8 at 7. Specifically, the Government contends that, because Mr. Garcia failed to move for reconsideration of the IJ's decision or to appeal the IJ's decision to the BIA, he is precluded from obtaining review of his claim. *Id.*

"There are two species of exhaustion: statutory and common-law." *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021). Statutory exhaustion deprives a federal court of jurisdiction, whereas common-law exhaustion "cedes discretion to a [federal] court to decline the exercise of jurisdiction." *Id.* (quoting *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 (1st Cir. 2016)). Here, no statute requires exhaustion. *Rodriguez v. Bondi*, No. 25-cv-406-JJM-PAS, 2025 WL 2899769, at *3 (D.R.I. Oct. 10, 2025) (citing *Romero*, 2025 WL 2403827, at *5; *Gomes*, 2025 WL 1869299, at *4-5).

Instead, this case is governed by the "more permissive" common-law exhaustion standard. *Brito*, 22 F.4th 240 at 256. Under this standard, the Court may find exhaustion to be unnecessary where "a particular plaintiff may suffer

irreparable harm if unable to secure immediate judicial consideration of his claim." *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (citing *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992)).  A court may choose to rule upon the merits of the issue presented when the "legal question is fit for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted).  Alternatively, the Court may find exhaustion unnecessary "if a substantial doubt exists about whether the agency is empowered to grant meaningful redress." *Portela-Gonzalez*, 109 F.3d at 77 (citing *McCarthy*, 503 U.S. at 147-48).

Here, Mr. Garcia is challenging his continued detention by ICE, a "loss of liberty [that] is a … severe form of irreparable injury." *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005); *see also Brito*, 22 F.4th at 256 (noting that "exhaustion might not be required if [the petitioner] were challenging her incarceration … or the ongoing deprivation of some other liberty interest").  Also, if he were required to go through a BIA appeal first, it is very likely that he would face further irreparable harm and hardship.  *See Gomes*, 2025 WL 1869299, at *5. "According to data released by the Executive Office for Immigration Review, the average processing time for bond appeals exceeded 200 days in 2024." *Id.* (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1248-49 (W.D. Wash. 2025).  Assuming the BIA is processing appeals at the same rate as last year, Mr. Garcia would likely face several additional months of detention while awaiting a BIA decision in his case. *See Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019) (waiving exhaustion requirement where "delays inherent in the [BIA review] process … would

result in the very harm that the bond hearing was designed to prevent: prolonged detention without due process during lengthy and backlogged removal proceedings") (internal quotations and citations omitted).

Furthermore, Mr. Garcia ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile. *See Matter of Cruz de Ortiz*, 25 I&N Dec. 601, 605 (BIA 2011) ("[N]either we nor the Immigration Judges have authority to rule on the constitutionality of the statutes we administer."); *see also Hechavarria*, 358 F. Supp. 3d at 238 (waiving exhaustion requirement because "the BIA does not have jurisdiction to adjudicate constitutional issues"). District courts, by contrast, are well-suited to review constitutional claims such as the ones at issue here. *See, e.g.*, *Mayancela*, 2025 WL 3215638, at *5-6; *Massingue*, 2020 WL 1866255, at *4-5; *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 144-45 (D. Mass. 2019).

Accordingly, the Court finds that waiver of any exhaustion requirement is appropriate here and moves to the merits of Mr. Garcia's petition.

### C.    The Merits

#### 1.    Standard of Review

While the Court has the authority to review Mr. Garcia's claim, this authority is "limited." *Diaz Ortiz*, 384 F. Supp. 3d at 143. The Court, for instance, "has no authority to encroach upon an IJ's discretionary weighing of the evidence." *Diaz-Calderon*, 535 F. Supp. 3d at 676 (quoting *Arellano v. Sessions*, No. 6:18-cv-06625-

MAT, 2019 WL 3387210, at *7 (W.D.N.Y. July 26, 2019)).  In reviewing the issue at hand, the Court is "mindful of [its] obligation to afford … a degree of deference to the [factfinder's] determinations."  *Hechavarria*, 358 F. Supp. 3d at 240 (alterations and ellipsis in original) (quoting *United States v. Tortora*, 922 F.2d 880, 882 (1st Cir. 1990)).

Nonetheless, where, as here, a noncitizen challenges the adequacy of their bond hearing, courts can review the IJ's decision to ensure that it comported with procedural due process requirements.  *See Mayancela*, 2025 WL 3215638, at *5 (reviewing whether IJ correctly applied burden of proof that due process requires at bond hearing); *see also Cepeda v. Shanahan*, No. 15 Civ. 09446 (AT), 2016 WL 3144394, at *2 (S.D.N.Y. Apr. 22, 2016) ("To the extent [noncitizen detainee] complains that … he was not accorded the process he is due—he can seek redress from this Court.").  To obtain habeas relief, the noncitizen "must show that the IJ 'failed to place the burden of proof on the Government' to either show dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence."  *Mayancela*, 2025 WL 3215638, at *5 (quoting *Diaz Ortiz*, 384 F. Supp. 3d at 143).

They can generally make this showing in one of two ways.  First, the noncitizen can demonstrate that the IJ "erred because the evidence itself could not—as a matter of law—have supported" the IJ's decision to deny bond.  *Hechavarria*, 358 F. Supp. 3d at 240 (citing *Nguti v. Sessions*, No. 16-CV-6703, 2017 WL 5891328, at *2 (W.D.N.Y. Nov. 29, 2017); *Enoh v. Sessions*, No. 16-CV-85(LJV), 2017 WL 2080278, at *3 (W.D.N.Y. May 15, 2017)).  Second, the noncitizen can point to the IJ's opinion

itself and show that the IJ "simply did not apply the correct standard to the facts." *Id.*; *see also Mayancela*, 2025 WL 3215638, at *5.

### 2.    Analysis

To reemphasize, the issue here is *not* whether this Court believes that the proof establishes that Mr. Garcia poses a flight risk. Rather, the question is whether the evidence that the IJ relied on at the bond hearing could—as a matter of law— establish that Mr. Garcia posed a flight risk. *See Nguti*, 2017 WL 5891328, at *2 (articulating appropriate standard). It is undisputed that dangerousness is not at issue in this case. *See* ECF No. 13, Ex. 2a at 3 (stating that DHS attorney was "not arguing danger"). The IJ only made a finding as to flight risk, which the Government is required to prove by "a preponderance of the evidence." *Hernandez-Lara*, 10 F.4th at 41.

Though the IJ did not state the reasoning for her denial of bond in her order, *see* ECF No. 12, Ex. 1 (noting lack of reasoning in IJ's order), it is clear from the hearing transcript that the sole basis for her determination that Mr. Garcia poses a flight risk was the warrant for his arrest in Guatemala. *See* ECF No. 13, Ex. 2a at 5 ("Sir, bond is denied. Um, there's an arrest warrant out for you in Guatemala, and I think, uh, that, um, I think meets the preponderance of the evidence standard."). However, the IJ committed two fundamental legal errors in making this determination.

a.    No Knowledge of What the Alleged Charges Against Mr. Garcia Are

The first error arises from the fact that none of the parties involved—from Mr. Garcia's attorney to the DHS attorney to the IJ herself—seem to know what the charges listed in the Guatemalan arrest warrant are.  When presented with the warrant at the bond hearing, the IJ stated: "And what is this, I have no idea what this charge is.  Suppression, material status and ideological falsehood.  Do you have any idea what that is?"  ECF No. 13, Ex. 2a at 3.  In response, the DHS attorney said: "No, judge, we're still, we're still trying to get that information ourselves."  *Id.*  Later, when the IJ asked Mr. Garcia's attorney if he knew anything about the arrest warrant, he replied: "No.  I have no clue what the charges are…. I tried … doing a Google search for those … terms [and] came up with nothing useful.  I, I'm as mystified as everyone else."  *Id.* at 4.

It stands to reason that, if an IJ is to rely on an arrest warrant in making a flight risk determination, the IJ should at least know what the charges levied against the noncitizen are.  Here, the BIA's decision in *Matter of Guerra* provides guidance. 24 I&N Dec. 37 (BIA 2006).  The First Circuit has since abrogated *Matter of Guerra* to the extent that noncitizen detainees no longer bear the burden of proving that they merit release at their bond hearings; now, the burden has shifted to the Government to prove that release is *not* merited.   *Hernandez-Lara*, 10 F.4th at 41; *see also Tenemasa-Lema v. Hyde*, No. 25-13029-BEM, 2025 WL 3280555, at *5 (D. Mass. Nov. 25, 2025).  However, the decision still governs how an IJ is supposed to decide "whether a detainee poses a flight risk."  *Mayancela*, 2025 WL 3215638, at *2-3 (citing

17

*Matter of Guerra*, 24 I&N Dec. at 40). Specifically, *Matter of Guerra* permits the IJ to consider any evidence in the record—including pending criminal charges—when assessing flight risk,[9] provided that such evidence is "*probative and specific.*" 24 I&N Dec. at 40-41 (emphasis added).

For example, in *Matter of Guerra* there was "specific and detailed" evidence in a criminal complaint of the noncitizen detainee's alleged involvement in a drug trafficking scheme, including "the source of the information that the [noncitizen] was involved in the sale of drugs" and "the events leading to the [noncitizen's] arrest, including locations, alleged accomplices, and other details." *Id.* at 41. The BIA concluded that, "even in the absence of a conviction," the IJ's "decision to give this evidence considerable weight above other factors … was reasonable given the scope and seriousness of the alleged criminal activity." *Id.*

Several federal courts have examined the "probative and specific" requirement in the context of due process challenges to IJs' bond determinations. In *Ortega-Rangel v. Sessions*, an IJ concluded that the noncitizen did not merit release on bond because she posed a danger to the community—a finding based solely on the fact that the noncitizen had previously been arrested for possession for sale of a controlled substance. 313 F. Supp. 3d 993, 1004 (N.D. Cal. 2018). However, the underlying

---

[9] The Court notes that *Matter of Guerra* focused specifically on the IJ's assessment of a noncitizen's "danger to the community." 24 I&N Dec. at 40. However, the BIA has made clear that the "probative and specific" requirement elucidated in *Matter of Guerra* also applies to an IJ's "flight risk" assessment. *See Matter of R-A-V-P-*, 27 I&N Dec. 803, 804-05 (BIA 2020); *see also Kharis*, 2018 WL 5809432, at *8 (applying "probative and specific" requirement in the context of flight risk determinations).

facts in the police report and declaration supporting the noncitizen's arrest showed only that the noncitizen was "aware that her boyfriend at the time sold drugs," not that she herself had sold drugs. *Id.* The district court therefore found that this evidence was not "probative and specific," and that the IJ's sole reliance on this arrest to detain the noncitizen violated her due process rights. *Id.* at 1005.

By contrast, in *Kharis v. Sessions*, an IJ denied the noncitizen's request for bond, concluding that he posed a flight risk because there was a warrant issued for his arrest in Russia, alleging that the noncitizen had participated in a scheme to embezzle roughly $114 million. No. 18-cv-04800-JST, 2018 WL 5809432, at *2 (N.D. Cal. Nov. 6, 2018). Unlike in *Ortega-Rangel*, the court found that the allegations contained in the warrant were "probative and specific" of the question of flight risk because they were "relevant to whether he has the means the flee, whether he has a motive to flee, and whether any amount of bond would provide a sufficient incentive to appear." *Id.* at 8. Thus, the IJ did not violate the noncitizen's due process rights by relying on the Russian arrest warrant because "the existence and seriousness of [the] pending criminal charges" against the noncitizen "appropriately [had] an impact on the flight risk analysis." *Id.*; *see also Alsharif v. Donelan*, No. 20-30030-PBS, 2020 WL 3232476, at *4 (D. Mass. May 14, 2020) (finding no due process violation where IJ's "danger to the community" determination was based on "detailed and specific" allegations against the noncitizen regarding his armed robbery charges).

In this case, the IJ violated Mr. Garcia's due process rights because, in denying his request for bond, she relied exclusively on evidence that was not "probative and

specific." *Ortega-Rangel*, 313 F. Supp. 3d at 1005. The Guatemalan warrant for Mr. Garcia's arrest for charges of "Suppression of Marital Status" and "Ideological Falsehood" is far from being "specific and detailed," and no one at the bond hearing could speak at all to the "scope and seriousness of the alleged criminal activity." *Matter of Guerra*, 24 I&N Dec. at 40-41; *see also Kharis*, 2018 WL 5809432, at *8; *Alsharif*, 2020 WL 3232476, at *4. Indeed, both the DHS attorney and the IJ herself conceded that they did not have the slightest idea what Mr. Garcia had been charged with in Guatemala. ECF No. 13, Ex. 2a at 3 ("I have no idea what this charge is. Suppression, material status and ideological falsehood. Do you have any idea what that is?"); *id.* ("No, judge, we're still, we're still trying to get that information ourselves."). In other words, the evidence against Mr. Garcia could not have—as a matter of law—supported the IJ's decision to deny bond if she did not even know what that evidence was or how it was relevant (if at all) to the question of flight risk. *Hechavarria*, 358 F. Supp. 3d at 240. As such, because the IJ's decision hinged entirely on the Guatemalan arrest warrant, she violated Mr. Garcia's due process rights by relying on it in making her bond determination.

        **b.**    **Disregarding Current Evidence Demonstrating There Is No Active Arrest Warrant for Mr. Garcia in Guatemala**

The second error the IJ committed at the bond hearing relates to her seeming disregard for the evidence presented by Mr. Garcia to prove that there is no longer an active warrant for his arrest in Guatemala. Prior to the bond hearing, Mr. Garcia's attorney submitted two documents to the IJ. The first document, which is from the Head of the Criminal Records Unit of the Supreme Court of Justice in Guatemala,

certifies that Mr. Garcia's "criminal record does not appear" in Guatemala's criminal database. ECF No. 14, Ex. 4 at 5. The second document, which is from the Guatemalan Migration Institute, confirms that there are no restrictions on Mr. Garcia's ability to travel outside the country because there are no pending legal proceedings against him. *Id.* at 8. The documents are dated August 27, 2025, and July 28, 2025, respectively. *Id.* at 5, 8.

At the bond hearing, Mr. Garcia's attorney made the IJ aware of this potentially exculpatory evidence: "I would note that … the last … document that we submitted … shows that [Mr. Garcia] [is] not wanted in Guatemala." ECF No. 13, Ex. 2a at 4. Mr. Garcia's attorney further pointed out that the date on the arrest warrant is from 2014, several months after Mr. Garcia came to the United States. *Id.* Then, in response to the attorney stating that Mr. Garcia was no longer wanted, the IJ said: "I don't know that. I don't. It says here, well, the court finds that the evidence … standard for flight preponderance of the evidence has been satisfied." *Id.* at 5.

The problem here has to do with the IJ's failure to "assess the risk of flight … on a *current* basis." *Chi Thon Ngo v. Immigr. & Naturalization Serv.*, 192 F.3d 390, 398 (3d Cir. 1999) (emphasis added). The IJ may be permitted to consider past criminal charges against a noncitizen in support of finding that they pose a flight risk. *Matter of Guerra*, 24 I&N Dec. at 41. However, the BIA has instructed IJs to look to, among other things, "the *recency* of such [criminal] activity." *Id.* at 40 (emphasis added); *see also Matter of Salas Pena*, 29 I&N Dec. 173, 173-74 (BIA 2025) (determining that noncitizen presented a danger to the community due to his "*recent*

arrest" for drug trafficking and because that charge "remains *pending*" (emphasis added)). Federal courts have also held that "[t]he process due even to excludable [noncitizens] requires an opportunity for an evaluation of the individual's *current* threat to the community and his risk of flight." *Chi Thon Ngo*, 192 F.3d at 398 (emphasis added); *see also Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008).

In *Chi Thon Ngo*, the Immigration and Naturalization Service (or "INS," an agency that was later replaced by DHS) repeatedly denied a noncitizen's requests that he be released from detention, concluding that he posed a flight risk and was a danger to the community. 192 F.3d at 398. However, the noncitizen's "nearly ten-year old convictions" were the sole justification underlying INS's decision to continue detention, and the agency "made no effort to determine if such conduct was *presently* likely to be repeated or whether it could be discouraged by requiring appropriate surety." *Id.* (emphasis added). Thus, the Third Circuit found that to presume "dangerousness to the community and risk of flight" based solely on the noncitizen's convictions from nearly a decade ago did "not satisfy due process," and the court ordered that he be released from detention unless INS could provide him with a procedure that more adequately comported with due process requirements. *Id.* at 399.

Moreover, in *Judulang*, an IJ denied a noncitizen's bond request, finding that the noncitizen would present a danger to the community. 562 F. Supp. 2d at 1126. However, in making this finding, the IJ relied solely on a nearly twenty-year-old

conviction for a crime of violence and no other evidence indicating dangerousness was put forward by the Government. *Id.* at 1127. The district court reviewing the noncitizen's habeas petition found this to be an "error of law" because there was no evidence to show that the noncitizen was "*presently* dangerous." *Id.* at 1126-27 (emphasis added). The court therefore concluded that "the denial of bond was inappropriate" and ordered that the noncitizen be released under appropriate conditions of supervision. *Id.* at 1127.

In this case, the IJ concluded that Mr. Garcia posed a flight risk—and therefore did not merit release on bond—because of a warrant for his arrest in Guatemala that was issued in 2014. ECF No. 13, Ex. 2a at 5-6. Notwithstanding the fact that the IJ did not even know what the charges listed on the warrant were, the IJ also ignored not one, but two documents produced in 2025, indicating that Mr. Garcia was no longer wanted in Guatemala. *Id.* at 5 (stating, in response to Mr. Garcia's attorney's assertion that Mr. Garcia was no longer wanted, "I don't know that. I don't."). Though the DHS attorney argued that the arrest warrant remained active, *see id.* at 3, there was no evidence put forth by the agency to support this assertion. Here too the Government maintains that Mr. Garcia remains wanted, *see* ECF No. 8 at 7 n.4; ECF No. 8-1 at 4, but again there is no evidence in the record to back up that claim.

The Court concludes that the IJ's decision to continue detaining Mr. Garcia constituted an "error of law" that violated his due process rights. *Chi Thon Ngo*, 192 F.3d at 398; *Judulang*, 562 F. Supp. 2d at 1126-27. In making bond determinations, IJs are instructed by the BIA to consider the *recency* of any criminal activity with

which noncitizens are involved. *Matter of Guerra*, 24 I&N Dec. at 40; *Matter of Salas Pena*, 29 I&N Dec. at 173-74. But the IJ did not do so here. First, the warrant for Mr. Garcia's arrest was issued more than ten years ago and, without further proof of the currentness or pendency of those charges, it was legal error for the IJ to rely on this warrant as the sole justification for her finding of flight risk. *Chi Thon Ngo*, 192 F.3d at 399. Second, even though the IJ stated in her order that she had conducted a "full consideration of the evidence presented," ECF No. 12 at 2, the IJ ignored two key documents produced mere months ago in 2025 that potentially cleared Mr. Garcia of any alleged wrongdoing in favor of a much older arrest warrant issued in 2014. ECF No. 13, Ex. 2a at 5. In other words, the evidence that the IJ *did* consider could not—as a matter of law—have supported a finding of *current* flight risk, and the IJ's mere presumption that it did violates Mr. Garcia's due process rights. *Chi Thon Ngo*, 192 F.3d at 398-99; *Hechavarria*, 358 F. Supp. 3d at 240.

### 3. Remedy

Having concluded that Mr. Garcia has successfully challenged the IJ's decision to deny him bond, *see* ECF No. 1 at 2, the Court must now determine the appropriate remedy. In this area, "[f]ederal courts have a fair amount of flexibility." *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005); *see also Siraj v. United States Sent'g Comm'n*, No. 19-cv-03375 (ABJ), 2021 WL 1061701, at *6 (D.D.C. Mar. 18, 2021) ("Federal courts have the power and discretion under federal habeas to fashion a wide-range of appropriate relief.") (citing *Peyton v. Rowe*, 391 U.S. 54, 66-67 (1968)).

Mr. Garcia has requested that he be released from ICE custody. ECF No. 1 at 2, 7. Given the due process violations that pervaded his bond hearing, the Court finds that Mr. Cruz's immediate release is appropriate. *See Morrisey v. Brewer*, 408 U.S. 471, 481 (1972) ("It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands."). Mr. Cruz's immediate release shall be subject to reasonable conditions of supervision. *See, e.g.*, *Hechavarria*, 358 F.Supp.3d at 243-44 (ordering similar relief); *Enoh*, 2017 WL 2080278, at *10-11 (same); *Judulang*, 562 F. Supp. 2d at 1127 (same).

## III. CONCLUSION

The Court is mindful that, in recent months, IJs have faced enormous pressure from the Executive Branch to dismiss cases quickly[10] and rule in certain ways.[11] However, "[d]ue process is not satisfied … by rubberstamp denials [of bond]," and IJs are not absolved of their duty to ensure that noncitizens receive constitutionally adequate bond hearings. *Chi Thon Ngo*, 192 F.3d at 398; *see also Mayancela*, 2025

---

[10] The Justice Department recently sent a memo to IJs, instructing them to dismiss cases quickly in order to speed up the number of immigrants the Government can detain. *See* Julia Ainsley, *Trump Admin Tells Immigration Judges to Dismiss Cases in Tactic to Speed Up Arrests*, NBC News (June 11, 2025), https://www.nbcnews.com/politics/national-security/trump-admin-tells-immigration-judges-dismiss-cases-tactic-speed-arrest-rcna212138.

[11] A former judge in the Chelmsford Immigration Court—the court that denied Mr. Garcia's bond request—recently stated in an interview that he "was told to rule in a certain way" by his superiors, who "also had pressure from above." *Romero*, 2025 WL 2403827, at *7 (citing Oscar Margain, *Fired Immigration Judges Describe Threat to Judicial Independence from Justice Dept.*, NBC Boston (July 25, 2025), https://www.nbcboston.com/news/local/fired-us-immigration-judge-interviews/3776340).

WL 3215638, at *5 ("[T]he IJ does not have discretion to fail to apply the burden of proof that due process requires.") (citing *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 176 (D.D.C. 2015) ("[I]t is not within DHS's discretion to decide whether it will be bound by the law.")). "The stakes are high and … grudging and perfunctory review is not enough to satisfy the due process right to liberty, even for [noncitizens]." *Chi Thon Ngo*, 192 F.3d at 398.

Accordingly, for the reasons articulated above, the Court GRANTS Mr. Garcia's habeas petition. ECF No. 1. The Government is hereby ORDERED to **release Eric Omar Garcia immediately** under reasonable conditions of supervision.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

December 3, 2025

26